**UNDERWRITERS LIFE INSURANCE COMPANY, Appellant,**

v.

**Terrell B. COBB and Wife, Edith M. Cobb, Appellees.**

No. 13–86–456–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 21, 1988.

Rehearing Denied Feb. 25, 1988.

Second Rehearing Denied March 24, 1988.

Don Black, Charles W. Blount, III, Dallas, for appellant.

Joe K. Longley, Tim Labadie, Mark Kincaid, Austin, for appellees.

Before DORSEY, UTTER and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

The Underwriters Life Insurance Company appeals the judgment for Terrell and Edith Cobb arising from Underwriters' refusal to pay Edith Cobb's medical claim under a medical insurance contract. After trial before a jury, the Cobbs recovered $1,088,230.00, including $1,000,000.00 in punitive damages. We order a remittitur of $500,000.00 of exemplary damages, but otherwise affirm.

In 1982, Roy Fowler became an insurance agent for Underwriters. An employee of his, Donovan Cherrette, contacted Terrell and Edith Cobb and persuaded them to cancel their existing medical insurance policy with another company and purchase accident and sickness insurance from Underwriters on August 31, 1982. When Cherrette sold the policy to the Cobbs, he was not licensed to sell insurance in the state.

Mrs. Cobb was hospitalized in 1984 and incurred expenses for medical services covered by the Underwriters policy in the amount of $6,249.69. Underwriters refused to pay her claims on the basis that she had failed to fully disclose her medical history on the policy application. This refusal gave rise to the litigation resulting in this appeal.

According to the Cobbs, Cherrette filled out the insurance application for them after receiving their truthful answers to questions concerning Mrs. Cobb's medical history. Roy Fowler signed the policy application as agent and forwarded the application to Underwriters, which subsequently issued the policy. The Cobbs testified that Cherrette failed to write on the application the medical information that they had given him concerning Mrs. Cobb's medical history and that they signed the application without reading it.

The Cobbs sued Underwriters for breach of the insurance contract, breach of the duty of good faith and fair dealing, negligence, and for violations of the Texas Insurance Code and the Deceptive Trade Practices Act. The jury found all issues in favor of the Cobbs, who were awarded damages in the amount of their original claim, $6,249.69, plus a statutory twelve percent penalty under the Insurance Code, $25,000.00 each for mental anguish, $1,000,000.00 in exemplary damages, and attorney's fees.

In its answers to special issues, the jury found that:

1. (S.I. 1) Donovan Cherrette had authority to deal with the Cobbs on behalf of Underwriters;

2. (S.I. 2, 3, & 4) Underwriters knowingly misrepresented the terms and requirements of its insurance policy to the Cobbs, and that such was the producing cause of damages to the Cobbs;

3. (S.I. 5 & 6) Underwriters refused to pay the Cobb's claim without conducting a reasonable investigation, and that such refusal was a producing cause of damages;

4. (S.I. 7 & 8) Underwriters failed to act in good faith to effectuate a prompt, fair, and equitable settlement of the plaintiffs' claims and that such was a producing cause of damages;

5. (S.I. 9) Such a failure was a breach of the duty of good faith and fair dealing and a proximate cause of damages;

6. (S.I. 11) Underwriters failed to instruct, supervise, or scrutinize the character of Fowler and Cherrette and that such constituted negligence and the proximate cause of damages to the Cobbs;

7. (S.I. 14 & 15) Such negligence was an unfair practice in the business of insurance and a producing cause of damages to the Cobbs;

8. (S.I. 16) The conduct found in issues 5, 7, or 11 exhibited such an entire want of care to raise the belief that its conduct was the result of conscious indifference to the rights or welfare of the Cobbs.

■ By its first four points of error, Underwriters challenges the legal theories supporting the Cobbs' recovery. By points of error two and three, Underwriters charges that there is no private cause of action by an insured against her insurer for a breach of the duty of good faith and fair dealing for the company's failure to act in good faith to effectuate a prompt, fair, and equitable settlement.

The Supreme Court has recognized a common law duty of insurers to deal fairly and in good faith with their insureds; a cause of action exists when no reasonable basis for denial of the claim or delay in payment exists, or the insurer fails to determine whether there is any basis for the denial or delay. *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex.1987). Underwriters argues that the *Arnold* holding is limited and that a suit for breach of this duty may only be brought after a separate suit for breach of the underlying contract has been successful, citing *Linkenhoger v. American Fidelity & Casualty Co.*, 152 Tex. 534, 260 S.W.2d 884, 887 (1953). However, in a footnote in *Arnold* during a discussion of *Linkenhoger*, the Supreme Court noted, "This does not mean that a contract claim and a claim of the duty of good faith and fair dealing may not be tried together when possible." *Arnold*, 725 S.W.2d at 168 n. 1. We find this language persuasive. The doctrine of judicial economy mandates the joinder whenever possible of related claims when it may be done without undue prejudice to the rights of the parties. Points of error two and three are overruled.

By its point of error number one, Underwriters maintains that there is no private cause of action for an insurance company's failure to conduct a reasonable investigation of a policy claim.

Tex.Ins.Code Ann. art. 21.21, § 16 (Vernon Supp.1987) grants a private right of action to any person who has sustained actual damages as a result of another's engaging in an act or practice: (1) declared in Section 4 of Article 21.21; (2) declared in rules or regulations lawfully adopted by the State Board of Insurance to be unfair or deceptive acts or practices in the business of insurance; or (3) defined by Section 17.46 of the Business Commerce Code (Deceptive Trade Practices Act).

The Cobbs argue that the State Board of Insurance has adopted rules concerning unfair claims settlement practices by adoption of Board Orders 41060 and 41454, the latter of which in Section 1.003 provides:

"Unfair Claim Settlement Practices. No insurer shall engage in unfair claim settlement practices. Unfair claim settlement practices means committing or performing with such *frequency as to indicate a general business practice* any of the following: ... (15) Refusing to pay claims without conducting a reasonable investigation based upon all available information." (Emphasis added).

*Chitsey v. National Lloyds Insurance Co.*, 738 S.W.2d 641, 643 (Tex.1987) held that such a cause of action for damages exists, and the failure to investigate must be done with such frequency as to indicate a general business practice. However, as we have found that recovery may be predicated solely on Underwriters' breach of the duty of good faith and fair dealing, we will only address those points of error that are germane to that ground of recovery. Accordingly, the first point of error is overruled. Underwriters' fourth point of error is likewise overruled as not dispositive.

Underwriters' seventh point of error complains of the admissibility of several pieces of evidence introduced by the Cobbs. We shall discuss each complaint separately.

### A. Evidence of Underwriters' denial of other claims

■ The Cobbs introduced the applications for insurance by other clients of Fowler and the letters sent to them by Underwriters notifying them that their claims had been denied. In each instance, the letters stated that the claims were denied because of the insured's failure to disclose past medical history or preexisting conditions. Underwriters also contends that its log of complaints filed against its agents was inadmissible as was a Texas map with the residences of these insureds circled in red. Underwriters contends that this evidence was immaterial, irrelevant, constituted improper character evidence, and was highly prejudicial.

Underwriters' denial of other claims around the same time as its denial of the Cobbs' claim, and on the same basis, was admissible to show that Underwriters' refusal to pay the Cobbs' claim was " 'commit[ted] or perform[ed] with such frequency as to indicate a general business practice.' " *Chitsey*, 738 S.W.2d at 643. Such a showing was necessary to recover under the Cobbs' pleaded cause of action for breach of Underwriters' duty to reasonably investigate. *Id.* It is also relevant and material under *Arnold* to prove the Cobbs' cause of action for Underwriters' breach of duty of good faith and fair dealing; these routine denials on the same grounds were sufficiently similar to indicate a failure by Underwriters to determine whether there was any basis to deny the Cobbs' claim. *See Arnold*, 725 S.W.2d at 167; *see also Texas Farm Bureau Mutual Insurance Co. v. Baker*, 596 S.W.2d 639, 643 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.); *cf. Group Hospital Services, Inc. v. Daniel*, 704 S.W.2d 870, 879–80 (Tex.App.—Corpus Christi 1985, no writ).

■ Further, the doctrine of *res inter alios acta* does not prevent admissibility, as Underwriters asserts. This rule provides that each act or transaction sued on must be established by its own particular facts and circumstances. *State v. Buckner Construction Co.*, 704 S.W.2d 837, 848 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). However, an exception to this rule exists; prior acts or transactions with other persons are admissible to show a party's intent where material, if they are so connected with the transaction at issue that they may all be parts of a system, scheme or plan. *See, e.g., Baker*, 596 S.W.2d at 642–43; *Payne v. Hartford Fire Insurance Co.*, 409 S.W.2d 591, 594 (Tex.Civ. App.—Beaumont 1966, writ ref'd n.r.e.); *Texas Osage Co-Operative Royalty Pool, Inc. v. Cruze*, 191 S.W.2d 47, 51 (Tex.Civ. App.—Austin 1945, no writ). Underwriters' intent in denying the Cobbs' claim was an important issue in the instant case.

### B. State Insurance Board Order Revoking Fowler's License

■ A copy of the Insurance Board's order which revoked Roy Fowler's license

on April 4, 1985, was put into evidence. It contained findings of fact that Fowler had committed various misrepresentations and misdeeds as an agent concerning insurance policies. This was admissible to show Underwriters knew or should have known of serious problems with Fowler's agency and the applications for insurance taken by him and his agents for various insureds, including Edith and Terrell Cobb.

### C. Fowler's indictment for insurance fraud

■ An indictment charging Roy Fowler with insurance fraud by misrepresenting a policy limit to another insurer in 1983 was admitted into evidence over objection. The president of Underwriters testified that he did not know of the indictment until he was shown it at trial. There is no other evidence that Underwriters had knowledge of the indictment.

Its admission was error. However, Mr. Walker, Underwriters' president, admitted that he had knowledge of an earlier conviction of Roy Fowler for felony theft in excess of $10,000.00 and that Walker became aware of the conviction for the first time when notified by the State Board of Insurance in April of 1985. In view of this and other evidence of Fowler's misdeeds and Underwriters' knowledge, we find the erroneous admission of the indictment of 1983 to be harmless.

We overrule Underwriters' seventh point of error.

■ Point of error thirteen alleges the trial court erred in admitting a hearsay statement by Cherrette that he was a representative of Underwriters. Both Mr. and Mrs. Cobb testified, over objection, that Cherrette told them so when he met with them to sell them an Underwriters policy. Cherrette's agency status was disputed at trial.

"Hearsay" is defined as an out-of-court statement offered to prove the truth of the matter asserted. Tex.R.Evid. 801(d). The matter here asserted, Cherrette's agency status, does not depend on Cherrette's assertions of agency; representations made by the agent have no effect. Only the acts of the principal are relevant to the issue of an agent's apparent authority. *Guthrie v. Republic National Life Insurance Co.*, 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Thus, the statement did not tend to prove that Cherrette had authority, but only that he passed himself off as having agency authority, a matter irrelevant to Cherrette's possible agency status.

Appellant's thirteenth point of error is overruled.

■ Underwriters' fifth point of error challenges the legal and factual sufficiency of the evidence. We will examine only the sufficiency of the evidence to support Underwriters' breach of the duty of good faith and fair dealing to its insureds. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth numerous times by the Supreme Court. *E.g., Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *see also* Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Underwriters argues it investigated Mrs. Cobb's claim by obtaining and reviewing her medical records, then denying her claim for failing to fully disclose her medical history. However, the Cobbs proved that Underwriters did not go far enough in its investigation to uncover the wrongdoing by Cherrette and Fowler, or chose to ignore that evidence. The Cobbs introduced evidence, including numerous documents, to show that Underwriters was aware of problems with Fowler's agency prior to the denial of the Cobbs' claims. For example, the evidence showed that Underwriters received many complaints from Fowler's clients concerning improprieties and false representations; that Cherrette sold Underwriters' policies while unlicensed; and that Underwriters knew of many activities by Fowler, including the making of false statements to clients, which eventually led

to Fowler's loss of his state insurance agent license.

There was evidence that Underwriters had ample indications of misdealings by their agent, Fowler, and his agent, Cherrette, in their dealings with insureds in similar situations as the Cobbs, to investigate and to pay the Cobbs' claim promptly. There was no reasonable basis to deny the claim. We overrule Underwriters' fifth point of error.

Underwriters' sixth point of error is not reached as it is not material to the disposition of the case.

■ Underwriters' ninth point of error urges a similar sufficiency challenge to the jury's finding that Underwriters acted with conscious indifference to the Cobbs' rights in its dealings with them. Point of error eleven merely states that the award of exemplary damages must fall if the theories of recovery supporting it are invalid.

The evidence is sufficient to support the finding that Underwriters acted with conscious indifference to the Cobbs' rights in its decision to summarily deny their insurance claim. Under *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983), the exemplary damages award is sustainable on that basis. We overrule Underwriters' ninth and eleventh points of error.

By its tenth point, Underwriters contends (1) there is no basis in the evidence to support the award of exemplary damages; (2) the award is grossly excessive and a remittitur is called for; and (3) the award is an excessive fine in violation of the Eight Amendment of the federal constitution.

■ Exemplary damages are recoverable in a successful action for an insurer's breach of duty of good faith and fair dealing with an insured. *Arnold*, 725 S.W. 2d at 168. They are recoverable under the same principles allowing recovery of exemplary damage in other tort actions. *Id.*, *citing Trenholm*, 646 S.W.2d at 933. A showing of conscious indifference to the rights of others or intent to harm is sufficient for an award of exemplary damages. *Trenholm*, 646 S.W.2d at 933. There is sufficient evidence of Underwriters' wrongdoing to support an award of punitive damages.

■ Appellant argues that the Eighth Amendment of the U.S. Constitution, prohibiting cruel and unusual punishment or excessive fines, should be applied to the imposition of exemplary damages here. However, the Eighth Amendment has traditionally been held to apply solely to the criminal process and not to matters out of the realm of punishment assessed for the conviction of crimes. *Ingraham v. Wright*, 430 U.S. 651, 654–666, 97 S.Ct. 1401, 1403–1409, 51 L.Ed.2d 711 (1976) (paddling of schoolchild not within Eighth Amendment); *Fong Yue Ting v. U.S.*, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893) (Eighth Amendment inapplicable to deportation of aliens); *Upshaw v. Wyman*, 360 U.S. 72, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1950) (inapplicable to jailing for civil contempt to enforce compliance with a subpoena). We hold the Eighth Amendment to the Federal Constitution not to apply to an award of exemplary damages.[1]

■ The amount of exemplary damages awarded must be rationally related to actual damages, and this relationship is a tool to aid the court in determining, depending on the facts of each case, whether the award was excessive. Other factors to be considered in determining the reasonableness of exemplary damages are the

1. We note that the U.S. Supreme Court has noted probable jurisdiction, —— U.S. ——, 107 S.Ct. 1367, 94 L.Ed.2d 683 and heard oral argument in *Bankers Life and Casualty Co. v. Crenshaw, No. 85-1765*, on Nov. 30, 1987. The issue to be reviewed, if jurisdiction exists, is whether the Eighth Amendment of the Federal Constitution limits punitive damage awards. Mr. Cren- shaw was awarded actual damages of $20,000.00 and exemplary damages of 1.6 million dollars by a state court in Mississippi, based on Bankers Life's bad-faith refusal to pay a medical insurance claim of Crenshaw. 483 So.2d 254 (Miss. Sup.Ct.1985); See *ABA Journal*, Dec. 1, 1987, p. 88, "The Constitutionality of Punitive Damages," Gellen and Levy.

nature of the wrong, the character of the defendant's conduct, the degree of the defendant's culpability, the situation and sensibility of the parties, and the extent to which the conduct offends the public sense of justice and propriety. *Wright v. Gifford Hill & Co.*, 725 S.W.2d 712 (Tex.1987) (worker's compensation case); *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981).

The next issue is whether the exemplary damages awarded is excessive under the circumstances of this case. The Cobbs were awarded $56,249.69 in actual damages and $1,000,000.00 in exemplary damages. However, the determination of excessiveness does not rest solely on the ratio of exemplary to actual damages; rather, that relationship is but one of several criteria.

The question of excessiveness of either actual or exemplary damages is one of fact, over which courts of appeal have jurisdiction under Article V, Section 6, of the State Constitution that states that decisions of courts of appeals shall be conclusive on all questions of fact. *Alamo National Bank*, 616 S.W.2d at 910; *Pool v. Ford Motor Co.*, 715 S.W.2d at 633.

We will review the evidence as it relates to the above criteria in order to determine whether the exemplary damage award is excessive.

*The Nature of the Wrong and the Character of the Conduct Involved:* An agent of the defendant company induced the plaintiffs to cancel their existing medical insurance policy and to purchase the one he was selling based on misrepresentation that their present carrier was going out of business. The agent was aware of Mrs. Cobb's medical problems but did not disclose them on the application nor indicate to the Cobbs that there would be any problem for them in acquiring the new insurance policy or its benefits because of her medical history. The company, although being put on notice by complaints, indict-ments, and convictions concerning the writing agent arising from misrepresentations to insureds, chose not to investigate whether Mrs. Cobb's prior medical history had been disclosed to the agent before denying the claim. It was necessary for the Cobbs to sue on the $6,249.69 medical claim in spite of the knowledge of Underwriters of the dealings and misrepresentations of its agents.

*The Degree of Culpability of the Wrongdoer:* There was evidence that the defendant company made a practice of denying claims on policies written by Fowler and Cherrette because of prior medical history of the insured: that complaints of policyholders throughout the State were of the same general nature as those in the instant case; that the company took no action to prevent Fowler and Cherrette from writing additional policies until their licenses were suspended by the State; that Fowler and Cherrette were "high producers" for the company; that because of the methods used by Fowler, Cherrette and the Company, Underwriters would take no risks in writing policies but would collect premiums from policyholders, refunding the premiums upon denial of the claims when the prior medical history of the insured was secured by Underwriters.

*The Situation and Sensibilities of the Parties:* Edith and Terrell Cobb were an elderly, childless couple married 42 years who lived on a farm and farmed for a living. When she underwent surgery several years prior to the purchase of the Underwriters policy, she and her husband incurred medical bills in excess of $30,000.00 which they repaid on a monthly basis. They can be described as unsophisticated.

*The Extent to Which the Conduct Offends a Public Sense of Justice:* Evidence was introduced to show that Underwriters denied in excess of thirty claims on policies written by Fowler and Cherrette throughout the State of Texas. The denial of benefits were largely based on the failure of the insureds to provide complete medical infor-

mation on the policy application. The bulk of the policies written by Fowler and Cherrette on which claims were denied were written on insureds living in rural areas.

The evidence tending to exculpate Underwriters was that it did not know that Cherrette had sold the policy, as Fowler's name appeared as agent and that Underwriters had no knowledge that Mrs. Cobb told Cherrette of her medical problems, but he failed to note them on the application, until the Cobbs filed their first amended original petition in March 1986. Trial was begun in June, 1986. Neither the demand letter, dated July 30, 1984, from the Cobbs' attorney, nor their original petition, filed September 17, 1984, gave notice that Mrs. Cobb had given full answers concerning her medical history to Cherrette.

The source of the Cobbs' complaints against Underwriters was a medical insurance policy, a contract. The medical claim that the company refused to pay was about $6,250.00. The Cobbs did not sustain any debilitating physical injury or bodily impairment, nor were Underwriters' activities such that would put others in risk of death or serious bodily injury.

After reviewing the evidence in light of the factors established by *Alamo National Bank*, the rule that exemplary damages must bear a reasonable relationship to the actual damages suffered, and the purpose of punitive damages to deter and punish, we find the exemplary damage excessive in the amount of $500,000.00. Point of Error Number 10 is sustained. We will suggest a remittitur in the amount of $500,000.00 as an alternative to remand.

Underwriters' sixteenth point of error attacks the sufficiency of the evidence to sustain the $50,000.00 mental anguish award and asserts the award is grossly excessive.

■■■ Physical injury is no longer a prerequisite to a recovery for mental anguish. *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649, 650 (Tex.1987); *Moore v. Lillebo*, 722 S.W.2d 683, 686 (Tex.1986)

(wrongful death case). It is necessary to show the tortfeasor acted knowingly or with conscious indifference, causing a relatively high degree of mental pain and distress, such as a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, dispair, or public humiliation. *Group Hospital Services, Inc. v. Daniel*, 704 S.W.2d 870, 878 (Tex. App.—Corpus Christi 1985, no writ); *Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

■■■ The Cobbs testified they experienced "shock" when Underwriters denied their claim. Mrs. Cobb could not sleep and stated she and her husband were "worried sick" and were "upset" about the denial. Mr. Cobb testified his "peace of mind" was "completely destroyed" and that Mrs. Cobb experienced extreme nervousness and lack of sleep because of the denial. Mr. Cobb's brother testified that Mrs. Cobb had gone from a "happy go lucky" person to a "sad" condition and noticed similar changes in Mr. Cobb because of Underwriters' denial. There is sufficient evidence to sustain the award; we do not find it excessive. We overrule Underwriters' sixteenth point.

■■■ Underwriters' eighth point of error challenges the legal and factual sufficiency of the evidence to support the finding that Underwriters, through its agents, knowingly made misrepresentations to the Cobbs to induce them to purchase insurance. The evidence is undisputed that Cherrette told the Cobbs that their prior carrier was going out of business. We overrule the eighth point of error.

■■■ Point of error fifteen challenges the legal and factual sufficiency of the evidence to support the jury's finding that Cherrette had authority to deal with the Cobbs on Underwriters' behalf. Underwriters contends that Cherrette had neither actual nor apparent authority to act as its agent when he sold insurance to the Cobbs. Apparent authority requires the principal

to clothe the agent with indicia of authority or to fail to exercise diligence to prevent the agent from clothing himself with such indicia. *Guthrie v. Republic Insurance Co.*, 682 S.W.2d 634 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ The sale of the policy by Cherrette to the Cobbs occurred on August 31, 1982. Prior to that date, on August 4, 1982, Underwriters endorsed Cherrette's application to the State Board of Insurance for a license to sell life, health, and accident insurance by signing the application directly beneath the statement, "Applicant is appointed to act as Group II stipulated premium agent for the company, subject to his qualifying for a license." The license was issued September 21, 1982. The information questionnaire of Underwriters completed by Cherrette, dated July 14, 1982, and received by Underwriters on August 4, showed Roy Fowler as a reference and Fowler approved the application as "General Agent." Fowler requested Underwriters to obtain an agent's license for Cherrette on August 4, signing the request as General Agent. Fowler was a general agent of Underwriters and its president, William T. Walker, testified that Fowler had the authority to hire subagents. The receipt that Cherrette gave the Cobbs was an Underwriters' receipt form with instructions to the customer, "All premium checks must be made payable to the Company; do not make check payable to the agent or leave the payee blank." The receipt was signed by Cherrette. The application for the policy ultimately issued to the Cobbs was signed by Fowler as agent and the Cobbs. Cherrette's name does not appear on the policy application.

Underwriters strongly argues that Cherrette was not authorized to solicit sales for the company prior to his being licensed to do so by the state board and that there is no evidence that it affirmatively held the agent out as possessing the authority or that it knowingly and voluntarily permitted the agent to act in an unauthorized manner, citing *Guthrie*. However, it is undisputed that Fowler had authority to bind the company in his capacity as general agent, and as such, he was authorized to hire subagents. Because Fowler signed the Cobbs' application knowing that Cherrette had sold the policy, he voluntarily permitted Cherrette to act in an unauthorized manner.

As the Texas Supreme Court wrote in *Royal Globe Insurance Co. v. Bar Consultants*, 577 S.W.2d 688, 694 (Tex.1979):

> Though it may be harsh to hold a principal liable for the deceptive acts of his agents where he does not authorize or have knowledge that they occurred, such result is clearly called for by the legislature's enactment of the DTPA. (cite omitted) The rationale behind this agency principle is expressed by Justice Learned Hand when he wrote: "... since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Standard Distributors v. F.T.C.*, 211 F.2d 7, 15 (2d Cir.1954).

The scope and status of Cherrette's agency is irrelevant to Underwriters' duty to deal fairly and in good faith, a theory of recovery pled and proved by the Cobbs. The jury found that Underwriters breached its duty of good faith and fair dealing and its duty to reasonably investigate the Cobbs' claim. These breaches relate to decisions made by Underwriters, not by Cherrette. Point of error fifteen is overruled.

Underwriters' twelfth point of error is not dispositive and is overruled.

Underwriters' fourteenth point complains that several special issues should not have been submitted to the jury since their wording assumed a fact in dispute. Underwriters seems to complain that the special issues implied that Cherrette was acting as an agent or subagent for Underwriters. The complained-of wording asks the jury to determine whether Underwriters, acting through any of its agents, committed various acts of misconduct.

Special issues should be worded to avoid assuming the truth of a material controverted fact, thereby constituting a comment on the weight of the evidence. *Alvarez v. Missouri–Kansas–Texas Railroad Co.*, 683 S.W.2d 375, 377 (Tex.1984); *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 488–89 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277.

We find no error. A corporation is a legal fiction and can act only through its agents, as the jury was informed in the charge. Further, even if the wording did constitute an improper comment on the weight of the evidence, it is not reversible since it did not cause the rendition of an improper judgment. *Alvarez*, 683 S.W.2d at 377. By its answer to the first special issue, the jury found that Cherrette had authority to deal with the Cobbs on Underwriters' behalf. Thus, there is no harm. We overrule Underwriters' fourteenth point.

By its seventeenth point of error, Underwriters complains the Cobbs received a double recovery for their injuries. It argues that the Cobbs were not entitled to a penalty of twelve percent of their claim, as well as their attorney's fees and award of punitive damages. The twelve percent penalty and attorney's fees are authorized by Article 3.62 of the Insurance Code, since Underwriters did not pay the Cobbs' claim within thirty days of demand. The exemplary damages were permitted under the common law for Underwriters' breach of its duty of good faith and fair dealing. Underwriters contends that it is being twice punished for one act, its decision to not pay the claim, and therefore it should be assessed only one penalty.

We find *Mayo v. John Hancock Mutual Life Insurance Co.*, 711 S.W.2d 5 (Tex. 1986), where the Supreme Court permitted a recovery of both a twelve percent penalty and treble damages under the DTPA for deceptive acts, to be on point. The violation of Article 3.62 is based on failure to pay under the policy within 30 days. Recovery for breach of Underwriters' duties of good faith and fair dealing involves more than the automatic penalty should payment not be made within thirty days. Recovery of each does not constitute two recoveries "for the same act or practice." See *Mayo*, 711 S.W.2d at 7. We overrule Underwriters' seventeenth point.

Findings concerning the Cobbs' negligence were irrelevant to their recovery for Underwriters' breach of duties and are not controlling. Points of error eighteen and nineteen are overruled.

Underwriters' twentieth and final point avers that the jury's findings that Mrs. Cobb's prior medical history was not a material fact for the insurance contract to be issued are against the great weight of the evidence or were conclusively established. The jury found that Cherrette, not the Cobbs, had failed to include the Cobbs' medical history on their application, and ample evidence supports this finding. We overrule Underwriters' last point.

Because we have found the amount of exemplary damages awarded to be excessive in the amount of $500,000.00, we RE-MAND for new trial. If a remittitur of $500,000.00 is filed by appellee within thirty days from the date of this opinion, the cause will be affirmed.