David DURBIN, Appellant,

v.

DAL–BRIAR CORPORATION, Appellee.

No. 08–92–00409–CV.

Court of Appeals of Texas,
El Paso.

Feb. 2, 1994.

Rehearing Overruled March 3, 1994.

Michael R. Wyatt, El Paso, for appellant.

Donald E. Godwin and John M. Frick, Godwin & Carlton, P.C., Dallas, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Plaintiff David Durbin appeals from a take-nothing verdict in this wrongful termination case brought under Tex.Rev.Civ.Stat. Ann. art. 8307c.[1] Durbin complains that the trial court wrongfully excluded evidence of other terminations, which Durbin claimed were relevant and admissible to prove the company's policy of dismissing employees filing worker's compensation claims. Durbin also complains of jury misconduct, asserts that he proved his right to recover as a matter of law, and alternatively claims that the jury's verdict was against the great weight of the evidence. Finding that the trial court erred in excluding relevant evi-

---

1. That statute provides:

No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding. Tex. Rev.Civ.Stat.Ann. art. 8307c, § 1 (Vernon Pamphlet 1993).

dence, we reverse and remand for a new trial.

## FACTS

David Durbin worked at Dal–Briar Corporation, a talc mine in Culberson County, from February 1981 until November 6, 1989. He began work as a truck driver, and was eventually promoted to shop mechanic, then head mechanic. He remained in that position until he was terminated.

During his tenure at Dal–Briar, Durbin had eight work-related injuries. Dal–Briar or its insurer paid all medical expenses for his treatment. None of his first seven injuries were serious, and none involved lost time from work. Durbin never made a claim for worker's compensation benefits beyond payment of his medical expenses. After his sixth injury, Durbin's supervisor, Mack Minyard, told him that if he was injured once more Dal–Briar would fire him. Minyard was himself fired for unrelated reasons, and did not work at Dal–Briar in November 1989. Durbin had a seventh injury, also minor, after which he was not fired. In August 1989, however, a hydraulic motor fell on his hand, crushing his finger. A Dal–Briar employee took him to the hospital in Van Horn where the attending physician recommended amputation. Durbin did not agree to this, and instead went to see a specialist in El Paso the next day. When he informed a Dal–Briar employee of his wish to see a specialist, she told him he should just get the amputation as more complicated treatment would just "waste money for the company." Nevertheless, Dal–Briar paid all costs of Durbin's treatment, and his finger was saved.

Durbin was off work for six weeks. He returned with instructions from his doctor to avoid heavy labor and to keep his injured hand clean. Dal–Briar never allowed Durbin to resume work at the machine shop. Instead, he was assigned to dig a water line with pick and shovel, then told to drill an inch-and-a-half hole in a Caterpillar tractor using an electric hand drill. Durbin testified this job could not be done with the drill. He asked that he be allowed to do it on the shop's drill press, or with a torch. The mine manager refused to agree to this, and told him to do it alone, with the hand drill. Durbin attempted to drill the hole, but could not because the drill twisted up his injured arm. A certified mechanic who did contract work for Dal–Briar testified that he could use this hand drill to bore holes in metal, air conditioning cabinets, truck cabs, and heavy steel.

Five days after the incident with the hand drill, Durbin's supervisor called him into Dal–Briar's office and terminated him. During this meeting, Durbin was given two written warnings. In one, he was told he had not kept up his record-keeping; the second was his notice of termination. The second "warning" told Durbin that because he was unable to do the drilling job asked of him, forcing Dal–Briar to send the work out to a machine shop, he was being fired. Although the two disciplinary warnings were dated 11/6/89, and Durbin was fired on that date, both documents listed "DATE OF INCIDENT" as 11/31/89. Neither party ever explained or explored this discrepancy.

Durbin filed suit alleging Dal–Briar had violated 8307c in terminating him. His theory of the case was that it was company policy to terminate employees who received on-the-job injuries, sought worker's compensation benefits, or hired lawyers. He specifically alleged this theory in his trial petition:

> Plaintiff would further show that it was the Defendant's practice and/or procedure to fire, terminate or get rid of employees who, following an on-the-job injury, sought the medical treatment of a doctor of their choice or hired an attorney to represent them in connection with the making of a claim pursuant to the Texas Worker's Compensation Act or instituted a proceeding under the Texas Worker's Compensation Act.

The district court initially consolidated Durbin's case with two other 8307c cases against Dal–Briar. Dal–Briar challenged the consolidation order by writ of mandamus in this Court. We conditionally granted the writ, and the trial court deconsolidated the three cases. *Dal–Briar Corp. v. Baskette*, 833 S.W.2d 612, 617 (Tex.App.—El Paso 1992, orig. proceeding). Durbin's was the first of the three to go to trial.

In a complete about-face, The trial court granted Dal–Briar's motion in limine, which requested that plaintiff be prohibited from:

Calling persons terminated by Defendant who have had worker's compensation claims to speculate on why they may have been terminated or how they might have been treated by Defendant. Such evidence is not relevant to why Plaintiff or how Plaintiff was treated in this case and, in any event, would be far more prejudicial than probative. Tex.R.Civ.Evid. 401, 402, 403.

Dal–Briar later orally expanded its limine motion, asking that Durbin be completely prohibited from putting on evidence about any other terminations. The trial court agreed, and not only prohibited Durbin from mentioning the other two lawsuits against Dal–Briar, it prohibited him from mentioning *any* specific incident of discrimination against worker's compensation claimants other than himself. In addition, the trial court excluded the evidence of a second supervisory employee, Kevin Johnson, who would have testified that the mine's supervisors had instructions from Dallas that "if somebody was injured on the job that they would find a way to terminate them," and that ten people with compensation claims were fired while Johnson worked at Dal–Briar. Thus, Durbin's only evidence of Dal–Briar's policy came from Mack Minyard, his immediate supervisor, who was allowed to testify only in general terms:

Q: Did Dal–Briar have the policy of how it treated certain employees who had too many workmen's comp claims?

A: Yes.

Q: What was that policy?

A: Get rid of them.

Q: Where did that policy come from?

A: From Dallas.

Q: Who over in Dallas gave you that policy?

A: Bob Brittingham and Bill Cox.

Q: Did you ever hear it from any other employees or secretaries or anything?

A: Yes, sir.

Q: Do you recall who they might be?

A: Doris Crockett. I think her last name is Crockett.

The jury returned a take-nothing verdict, and the trial court entered judgment accordingly. Plaintiff filed a motion for new trial, in which he urged, among other things, that jury misconduct had tainted the jury's deliberations and deprived him of a fair trial. The trial court initially granted plaintiff's motion for new trial, then vacated that order. This appeal followed.

### EVIDENCE OF OTHER SIMILAR INCIDENTS

■ In Points of Error One through Six, Durbin complains that the trial court wrongly excluded evidence that Dal–Briar terminated other employees after they suffered on-the-job injuries and filed compensation claims.

■ We may reverse a judgment based upon admission or exclusion of evidence only where: (1) the trial court did err; and (2) the error was reasonably calculated to cause and did cause rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394, 396 (Tex.1989); *LaCoure v. LaCoure*, 820 S.W.2d 228, 235 (Tex.App.—El Paso 1991, writ denied); Tex.R.App.P. 81(b)(1). A complaining party need not prove, however, that "but for" the exclusion of evidence, a different judgment would necessarily result; rather, it is enough to show that an improper verdict probably resulted. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992); *Castro v. Sebesta*, 808 S.W.2d 189, 192 (Tex.App.—Houston [1st Dist.] 1991, no writ).[2]

---

**2.** As Justice O'Connor noted in *Castro*, there is a line of cases which suggests that, even where the two-prong test is met, we should not reverse unless the whole case turns on the particular evidence admitted or excluded. *Castro*, 808 S.W.2d at 193; *See LaCoure*, 820 S.W.2d at 235; *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ

ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *Atlantic Mutual Insurance Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). This formulation seems to conflict with the general rule, and with the Supreme Court's most recent ruminations on the test, which caution:

## 1. *Was the exclusion error?*

The initial question we face is whether the trial court erred in excluding specific evidence of other similar terminations, together with testimony by a second supervisor that such terminations were company policy.

■■■ The trial court's decision to admit or exclude evidence is within its sound discretion. *Farr v. Wright*, 833 S.W.2d 597, 599 (Tex.App.—Corpus Christi 1992, writ denied); *Syndex Corp. v. Dean*, 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied); *Dudley v. Humana Hospital Corp.*, 817 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1991, no writ). Generally, however, all relevant evidence is admissible. Tex.R.Civ.Evid. 402. A trial court errs in excluding relevant evidence unless some rule or principle requires its exclusion. Rules excluding relevant evidence must be supported by good cause and solid policy reasons. *Farr*, 833 S.W.2d at 599.

The rules of evidence specifically contemplate admission of:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. Tex.R.Civ.Evid. 406.

Thus, Durbin argues that the evidence from other terminated employees, and specific testimony from management witnesses, should have been admitted under Rule 406 to prove a routine practice at Dal–Briar. Although we have not found a case where evidence of similar acts was proffered to prove custom, policy, or routine practice in an 8307c context, many courts have held that such evidence is proper in a variety of situations. *See Missouri–K.T.R. Co. v. May*, 600 S.W.2d 755, 756 (Tex.1980) (error to exclude evidence of earlier accidents at railroad crossing); *Farr*, 833 S.W.2d at 599 (error to exclude evidence of similar, very rare, infections in defendant's patients in medical malpractice case); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 660 (Tex.App.—El Paso 1989, writ denied) (evidence of disparate dissimilar treatment relevant in 8307c case); *John Deere Co. v. May*, 773 S.W.2d 369, 374 (Tex.App.—Waco 1989, writ denied) (proper to admit evidence of other dozers self-shifting from neutral into reverse in products liability case); *Paramount National Life Ins. Co. v. Williams*, 772 S.W.2d 255, 260 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (proper to admit evidence that insurance company routinely denied claims without adequate investigation in good faith and fair dealing case); *Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 815 (Tex. App.—Corpus Christi 1988, no writ) (same).

■■■ Dal–Briar claims, on the other hand, that the doctrine of *res inter alios acta* precludes admission of this evidence. That tenet requires that each act or transaction sued upon must be established by its own particular facts and circumstances and cannot be established by other similar incidents or conduct. *Cobb*, 746 S.W.2d at 815. *Cobb*, a good faith and fair dealing case, recites a specific exception to the *res inter alios acta* dictum, however:

> [P]rior acts or transactions with other persons are admissible to show a party's intent where material, if they are so connected with the transaction at issue that they may all be parts of a system, scheme or plan. [Citations omitted]. Underwriters' intent in denying Cobbs' claim was an important issue in the instant case. *Cobb*, 746 S.W.2d at 815.

Thus, in the very case upon which defendant relies, the appellate court found that evidence of similar acts around the same time period and on the same basis were indeed

---

This court has recognized 'the impossibility of prescribing a specific test for determining whether any error ... [including] the improper admission or exclusion of evidence ... "was reasonably calculated to cause and probably did cause the rendition of an improper verdict." ' [Citations omitted]. 'Such a determination necessarily is a judgment call entrusted to the sound discretion and good senses of the reviewing court.' *McCraw*, 828 S.W.2d at 757–58.

Believing, with the Supreme Court, that it is impossible to say when a whole case turns on any particular piece of evidence, we disavow that formulation of the test.

admissible to show that the company's refusal to pay claims was "committed or performed with such frequency as to indicate a general business practice." *Id.* Put another way, the applicable rule is:

> Other accidents or events may be admissible to prove that a similar incident occurred, provided that the circumstances between the incidents are reasonably similar. [Citations omitted]. The inference drawn is that if an act or occurrence happened before, it is likely that it occurred again if the circumstances are reasonably similar. *Farr*, 833 S.W.2d at 601.[3]

Here, the evidence Durbin sought to introduce involved the same supervisory personnel, the same workplace, and the same pattern of conduct that he alleged motivated his own discharge. Although Mack Minyard was allowed to testify in a general way that the company had a general policy to "get rid of" employees with compensation claims, the jury never heard the facts upon which Minyard's statement was founded. Minyard, moreover, had no personal knowledge of Durbin's termination. Durbin's theory at trial was that Dal–Briar had a routine practice or policy of discriminating against workers who suffered on-the-job injuries, and he was one victim of that policy. The trial court's decision to exclude the proffered evidence severely truncated Durbin's case: leaving the jury with a single assertion by one fired manager that the company maintained an illegal policy. This is a far different posture than Durbin would have been in had the trial court allowed Minyard to explain what actions he, and other management personnel,

took to "get rid of" Jesus Ornelas, Nestor Mendoza, James Brown, and Cruz Venegas Leyva.[4] It is a far different case than plaintiff would have presented had he been allowed to corroborate Minyard's statements with the testimony of Kevin Johnson and the discharged workers themselves.[5] We find that the specific incidents Durbin sought to relate were substantially similar to his own termination. They were circumstantial evidence of an essential element of his 8307c claim: a causal connection between his worker's compensation proceeding and his firing. We find that the doctrine of *res inter alios acta* does not apply here. This evidence was therefore relevant and, absent some overriding rule or principle, should have been admitted.

Dal–Briar next claims that evidence of other employment actions would have prejudiced, confused and misled the jury, and was thus properly excluded under TEX.R.CIV. EVID. 403. We point out initially that very little relevant evidence in a lawsuit is *not* prejudicial to one party or another. As one court of appeals has framed the balancing act we must perform:

> Every plaintiff tries to introduce evidence that will support his case and harm or prejudice that of the defendant. Extraneous incidents ... can be extremely harmful to the defense. However, evidence cannot be excluded just because it may prejudice the opposing party before the fact-finder. [Citations omitted]. This is because Rule 403 recognizes that evidence can result in fair or unfair harm.

---

3. *Farr* is particularly helpful here because it deals with the trial court's erroneous *exclusion* of similar events. (Most cases addressing this issue deal with challenges to the admission of such evidence). *Farr* was a medical malpractice case where the plaintiff contracted a serious spinal infection, discitis, after a diagnostic procedure performed by defendant doctor. The trial court excluded evidence that the doctor had treated five patients all contracting discitis within a two-month period (an extraordinarily high rate for this rare disease). The court of appeals reversed, holding that the evidence was relevant, its probative value was significant and was not *substantially* outweighed by the prejudicial effect of evidence, and the exclusion was harmful in that it was an important factor forming plaintiff's expert's opinion.

4. Plaintiff does not raise any complaint about the exclusion of the two ex-employees with pending 8307c claims. We therefore do not address that question.

5. We do not address the question of when this evidence would have become merely cumulative, thus justifying the trial court in excluding it for that reason. The evidence cannot be called cumulative in its present posture because *no one*, not Minyard, Johnson, or any former employee, testified on similar specific incidents. The evidence was entirely excluded and we find that evidence on the specific incidents was not cumulative of Minyard's bare assertion that there was a policy.

*See* Tex.R.Civ.Evid. 403. Thus evidence must not only create a danger of *unfair* prejudice, but such danger must substantially outweigh its relevance before it can be excluded. Other incidents may be excluded only if their relevance is substantially outweighed by the 'danger of unfair prejudice.' *John Deere Co.,* 773 S.W.2d at 374.

Clearly, evidence that other employees were terminated after making worker's compensation claims would be prejudicial to Dal–Briar; the proper question, however, is whether such evidence would create *unfair* prejudice *substantially* outweighing its relevance. We find it would not; Dal–Briar would of course be entitled to present evidence to prove that these firings, actual or constructive, were not for prohibited reasons. We presume Dal–Briar has the records and resources to summon such rebuttal evidence. Unfair prejudice should not preclude admission of similar acts here.

As to the danger of misleading and confusing the jury, if the three 8307c cases against Dal–Briar were tried together, as the trial court originally proposed, we would wholeheartedly agree. That is the very reason we found that consolidating three separate cases was improper, and ordered the three cases against Dal–Briar deconsolidated. *Dal–Briar,* 833 S.W.2d at 616. That is not however, the posture of this case now. The only 8307c case the jury here decided was David Durbin's; although evidence of other similar acts by Dal–Briar would be relevant in deciding the company's motive in firing plaintiff, the jury decided the company's culpability in only one case. Moreover, the trial court could properly give limiting instructions on the evidence of other employees' terminations, and this would prevent confusion and limit the possibility that the jury would decide Durbin's case based on what Dal–Briar did to others.

■ Finally, we note that Dal–Briar opened the door to plaintiff's introduction of this evidence in several ways, even assuming the trial court properly excluded it initially. In his opening statement, having just obtained a ruling that no evidence of other terminations would be allowed, Dal–Briar's counsel told the jury he would show that "no one was ever fired as a result of a worker's comp claim." In his cross-examination, counsel quizzed Minyard about his reasons for firing employees other than Durbin, and repeatedly asked about other employees with compensation claims—whether Minyard had spoken to top management about them, and whether any who had made claims were later fired for other reasons. Counsel asked Minyard about his own discharge and that of Kevin Johnson, specifically establishing that neither was fired after making a compensation claim. He asked Minyard whether the mine manager ran the mine in a "fair way." Minyard responded "not entirely, no sir," but was prohibited from explaining why he thought so. To allow these assertions and inquiries by the company without allowing plaintiff to refute them resulted in a trial skewed in favor of defendant, as the jury's verdict illustrates.

For these reasons, we find the trial court erred in excluding relevant, probative evidence of substantially similar incidents involving Dal–Briar's employees. We further find that the danger of unfair prejudice did not substantially outweigh the probative value of this evidence, that there was minimal danger of misleading or confusing the jury, and the evidence excluded was not merely cumulative.

## 2. *Was the error waived?*

■ Dal–Briar argues that Durbin waived any error in the exclusion of evidence because he did not formally attempt to introduce the excluded testimony before the jury; instead, he offered witness depositions as a bill of exceptions. This, Dal–Briar argues, was insufficient to preserve error. In light of counsel's extensive argument on this issue during trial, the court's unequivocal ruling (both before and during trial) that it would exclude all such evidence, and Dal–Briar's stipulation that plaintiff could submit the depositions in their entirety as a bill of exceptions, we find this argument disingenuous. The purpose of a motion in limine is to require a ruling on admissibility before evidence is introduced to the fact finder. The trial court ruled this evidence inadmissible several times; no legitimate purpose would

have been served by requiring plaintiff to call witnesses he knew would not be permitted to testify. We find Durbin did not waive his complaint regarding the admissibility of evidence concerning other specific terminations.

### 3. *Was the error harmful?*

■ Having concluded, under the circumstances of this case, that the trial court's decision to exclude all specific evidence of terminations after worker's compensation claims was error, we must now decide whether the error was harmful. TEX.R.APP.P. 81(b)(1). In doing so, we review the entire record. *Farr*, 833 S.W.2d at 603. Usually, harmful error does not occur if the excluded evidence is cumulative, or does not concern a material issue. *Id.* Dal–Briar claims the excluded evidence is cumulative of Minyard's testimony. We do not agree.

First, some of the excluded evidence was testimony that Minyard himself was prohibited from giving. Minyard told the judge he felt he could not give full, complete, and truthful answers because he was prohibited from mentioning specific instances of discriminatory treatment. Minyard was himself terminated, and without specific examples of how the company policy was implemented, the jury may well have concluded he was simply a disgruntled ex-employee seeking revenge. Allowing testimony from other witnesses corroborating Minyard would have added to his credibility, but that was not an option for plaintiff, either. Precluding Minyard from discussing specific instances of termination following on-the-job injuries harmed plaintiff's case by seriously undermining the credibility of his star witness.

Second, the trial court's ruling made it impossible for plaintiff to refute Dal–Briar's claim that "no one was ever fired as a result of a worker's comp claim." As plaintiff was prohibited from introducing examples of workers fired after making compensation claims, the jury was entirely justified in believing Dal–Briar's claim was correct. Had Durbin been allowed to introduce the excluded evidence, Dal–Briar's claim would have been far less plausible. We therefore conclude the exclusion of this evidence was reasonably calculated to lead to, and probably

resulted in, an improper verdict. TEX. R.APP.P. 81(b)(1).

Having found that the trial court erred in excluding this evidence, that the error was preserved, and that it was harmful, we sustain Points of Error One through Six.

## JUDGMENT ON THE JURY VERDICT

■ In Points of Error Seven and Eight, plaintiff Durbin urges he established as a matter of law that he was terminated in violation of TEX.REV.CIV.STAT.ANN. art. 8307c, or alternatively that the jury's verdict was against the great weight of the evidence. We disagree. The jury heard evidence from several witnesses that David Durbin's job performance was lacking, and that he was fired for that reason. Dal–Briar established that Durbin was injured on the job seven times without losing his job; defendant also established that Durbin's job application revealed he had a prior on-the-job injury, which did not prevent Dal–Briar from hiring him. This evidence provides some support for the jury verdict, and we find that the trial court did not err in refusing to grant a new trial on this ground, or in refusing to enter judgment *non obstante verdicto*. Points of Error Seven and Eight are overruled.

## JURY MISCONDUCT

■ In Points of Error Nine and Ten, Durbin urges that the trial court erred in refusing to grant a new trial based upon jury misconduct, and in refusing to allow an evidentiary hearing on that issue. We find the current law clearly precluded any consideration of allegations such as those plaintiff made here.

■ The Texas Rules of Civil Procedure and the Texas Rules of Evidence both prevent jurors from testifying about their deliberations. The rules provide, respectively, that:

A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict concerning his mental processes in connection

therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. TEX. R.CIV.P. 327(b).

and:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. TEX.R.CIV.EVID. 606(b).

Under these rules, the only evidence of jury misconduct a trial court may consider is that which tends to prove that an "outside influence" was brought to bear upon a juror. *Soliz v. Saenz,* 779 S.W.2d 929, 931 (Tex. App.—Corpus Christi 1989, writ denied); *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751, 755 (Tex.App.—Houston [1st Dist.] 1988, no writ). "Outside influence" means a force external to the jury and its deliberations. Outside influence does not include information acquired by a juror and communicated to the others between the time the trial court instructs the jury and the time it renders a verdict, even where the information is not in evidence, and is unknown to jurors before trial. Outside influence, in the form of information not in evidence, must come from a *non-juror.* Information introduced into deliberations by a member of the jury, even if submitted with the intention of influencing and prejudicing a verdict, is not outside influence. *Soliz,* 779 S.W.2d at 932; *Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Weaver v. Westchester Fire Insurance Co.,* 739 S.W.2d 23, 24 (Tex.1987). Although the jury in this case apparently did consider information outside the evidence and law in reaching its verdict, that information came from a member of the jury during the course of deliberations and thus cannot satisfy the test for "outside influence."

During deliberations William Russell, the presiding juror, told the others of a boat company in Houston which purportedly closed down after many of its workers brought compensation cases. The jury discussed what effect plaintiff's victory in this case would have on the talc mine, and their fear that if many suits were filed the mine might close down, leaving many people in town without jobs. Several jurors filed affidavits stating this influenced their deliberations.

This discussion was clearly contrary to the trial court's instructions, and improper. Nevertheless, an injection of personal experience, knowledge, or expertise emanating from inside the jury is not an outside influence and will not support a new trial. Indeed, the trial court is specifically prohibited from considering such contentions, and properly refused to do so.

■ Plaintiff argues that Mr. Russell's feelings about worker's compensation suits, as reflected in his story about the Houston boat company, clearly prejudiced him against large jury verdicts and discrimination claims. Thus, his answers to certain voir dire questions were false, a type of jury misconduct not controlled by Rules 327(b) and 606(b). It is true that a juror's failure to disclose bias and prejudice can amount to jury misconduct justifying a new trial. *Soliz,* 779 S.W.2d at 933; *General Accident Fire & Life Assur. Corp. v. Coffman,* 326 S.W.2d 287, 291–92 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.). The complaining party, however, must obtain proof of a lie or concealment from some source other than the jury's deliberations. Evidence emanating from within the jury's decision-making process is not admissible and, therefore, will likewise not support a new trial. *Soliz,* 779 S.W.2d at 933; *Baker Marine Corp. v. Weatherby Engineering Co.,* 710 S.W.2d 690, 692–93 (Tex.App.—Corpus Christi 1986, no writ). Here the only evidence presented of Russell's bias against compensation claims was his statements to other jurors while they decided the case. This will not support a claim of jury miscon-

duct, even assuming that Russell's *voir dire* answers amounted to deliberate concealment.

 We find that his answers do not rise to that level in any event. Plaintiff complains of Russell's responses to two questions, which were as follows:

Q: Likewise, Ms. Morris, if we present our case and prove our case, you wouldn't have any problem giving us a big verdict either, would you?

A: (Juror 24) Right.

Q: Anybody in the next row? All right, sir?

A: (Juror 37) William Russell. I don't know my number.

THE COURT: 37.

A: (Juror 37) I am acquainted with the Masseys, like McDonald is. I do not know them personally.

Q: Would that be any kind of a problem for you, Bill?

A: (Juror 37) No.

Q: You think you could just do justice and go down the evidence—

A: (Juror 37) Hear the evidence.

Plaintiff's counsel also asked the panel, "[i]s there anyone on the jury panel who just does not believe in a large jury verdict?" to which no one responded. Plaintiff's counsel continued:

So I take it then from your silence that there is no one here in and of itself opposed to large jury verdicts. Is there anyone on the jury panel who does not believe in awarding a person damages if that person can show you that he has been discriminated against?

Again, no one on the panel responded. We cannot characterize these responses and silences as deliberate concealment in the face of specific and direct questions calling for disclosure. "Catch-all" questions do not meet the requirement of specificity. *Soliz,* 779 S.W.2d at 933; *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 851 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Counsel's questions to the entire jury panel on the issue of returning a large verdict, questions which pru-dent plaintiff's counsel ask in virtually every tort case, fall within this "catch-all" category.

Points of Error Nine and Ten are overruled.

### CONCLUSION

Although the trial court enjoys discretion in admitting and excluding evidence, upon review of the facts and law in this case we are left with the firm impression that the trial court's exclusion of evidence prevented David Durbin from receiving a fair trial. We therefore reverse the trial court's judgment and remand for new trial in accordance with this opinion.

OSBORN, C.J., not participating.