Cheryl FARR and Peter
R. Farr, Appellants,

v.

John C. WRIGHT, M.D., Appellee.

No. 13–90–472–CV.

Court of Appeals of Texas,
Corpus Christi.

May 28, 1992.

Rehearing Overruled July 30, 1992.

C. Anthony Friloux, Jr., Law Office of Warren L. Eddington, P.C., Houston, Warren L. Eddington, Law Office of Warren L. Eddington, P.C., Corpus Christi, for appellants.

Ronald B. Brin, Thomas F. Nye, Brin & Brin, Corpus Christi, for appellee.

Before GILBERTO HINOJOSA, KENNEDY, and SEERDEN, JJ.

OPINION

GILBERTO HINOJOSA, Justice.

This an appeal from a judgment in a medical malpractice case. The jury found appellee, Dr. John Wright, was not negligent. Appellants, Cheryl and Peter Farr, complain of rulings excluding evidence of several alleged similar prior acts or transactions involving appellee which occurred within two months of the alleged negligent act in this case. We reverse.

The evidence showed that Cheryl Farr was injured while working at a Red Lobster restaurant in Victoria. Dr. John Wright treated her. One of the procedures he performed was three-level discogram. A discogram is a diagnostic procedure involving entry of a needle into the innerspace between the vertebrae in the back. Dye is then injected and x-rays are taken.

After the discogram, Farr suffered severe pain and exhibited other symptoms of infection. The doctor unsuccessfully attempted to discover the cause of the pain by conducting several tests; however, he did not aspirate and culture from the sites of the discogram. He referred Farr to a psychologist to help her deal with the pain. He did not prescribe antibiotics.

Several months later, Farr went to another doctor, Dr. Swann, who did aspirate and culture. Dr. Swann discovered that each of the three discs upon which Dr. John Wright performed the discogram were infected with *staphylococcus epidermidis*, causing a condition known as discitis.[1]

As a result of the infection Farr required treatment for two months with intravenous antibiotics. The infection caused severe damage to her spine and ended her future plans to become a gymnastics teacher.

During discovery, it was disclosed that the doctor had experienced three or four cases of discitis in the two-month period during which Farr was treated. During the doctor's career of three to four years, he had performed between thirty and fifty

---

1. Discitis is very infrequent if the discogram is properly conducted. It is an inflammation of the disc spaces most commonly caused by infection, although it is also associated with an allergic reaction to the dye, a broken needle, or other causes.

discograms. Several studies indicated that the rate of discitis experienced by the authors was less than one percent of all discograms performed. The doctor's percentage of discitis was between 10% and 16% for his career, and much higher than that during the two-month period of time when he treated Farr. Based on the high incidence of discitis, and other evidence, the plaintiff's expert, Dr. Ken Fessler, concluded that the doctor consistently breached sterile technique during this period, and that, to a reasonable medical probability, the doctor also breached sterile technique when he treated Farr. The expert also concluded that the doctor negligently failed to diagnose Farr's condition.

Before trial, the court granted a motion in limine prohibiting the plaintiffs from admitting evidence of this series of other cases of discitis. The plaintiffs objected.

At trial, appellant sought to admit the evidence of the other cases of discitis as a basis of the expert's opinion that the doctor was negligent. Consistent with the trial court's ruling in limine, no evidence was allowed of the other cases of discitis.

During trial, after the offer of evidence was denied, the plaintiffs prepared a bill of exceptions. The bill of exceptions consisted of the deposition and testimony of Dr. Ken Fessler, several articles from scientific publications discussing discitis after discograms, medical reports, and several exhibits. The bill established that Dr. Ken Fessler would have testified that the frequency of discitis experienced by the doctor was unusually high. Specifically, he testified that five cases of discitis occurred during a very short period. One study offered in the bill showed that discitis occurred in only 5 cases out of 1014 discograms performed. Dr. Ken Fessler had never experienced a case of discitis in over 1500 procedures. Based on this evidence and a review of the hospital procedures and other evidence ruling out other causes, Dr. Ken Fessler concluded the doctor breached sterile technique and negligently failed to diagnose.

Appellant brings four points of error appealing from the adverse jury verdict.

Appellant's first point of error complains that the trial court erred in excluding evidence of the other cases of discitis. Appellant's position is that the other cases of discitis were relevant to establish the doctor's knowledge of the recurring problem of discitis during the most recent discogram procedures; thus his failure to diagnose was negligent. TEX.R.CIV.EVID. 404(b). She further argues the evidence was relevant to show that Farr's infection was caused by the doctor's negligent breach of sterile technique, rather than random factors. Lastly she argues that the substantial similarity between the other cases of discitis and Farr's infection renders the other cases of discitis admissible as part of the expert's opinion.

Appellee argues that the evidence was properly excluded on several grounds. The first objection to the evidence is that it is an improper use of *res ipsa loquitur* to admit the other cases of discitis as circumstances tending to prove negligence in this case. The second objection is that the evidence was not admissible as similar acts or conduct because the plaintiff failed to establish the similarity of the other cases of discitis. The third argument the doctor raises is that the probative value of the evidence is substantially outweighed by the prejudicial effect. TEX.R.CIV.EVID. 403.

■ To determine if the trial court erred in excluding evidence at trial we must determine whether the trial court abused its discretion. Generally, all relevant evidence is admissible. TEX.R.CIV.EVID. 402. Thus, a trial court errs if it fails to admit relevant evidence unless the evidence is excluded by some rule or principle. Rules which exclude relevant evidence must be supported by good cause and solid policy reasons. *See Davis v. Davis*, 521 S.W.2d 603, 607 (Tex.1975). The trial court abuses its discretion if its ruling is so incorrect that it cannot be sustained on any legal or factual ground.

We first address the issue whether the plaintiffs improperly attempted to use evidence of other cases of discitis under the theory of *res ipsa loquitur*. Liability Insurance Improvement Act, TEX.REV.CIV.

STAT.ANN. art. 4590i § 7.01 (Vernon 1977), upon which the doctor relies, provides:

> The common law doctrine of res ipsa loquitur shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state as of the effective date of this subchapter.

*Res ipsa loquitur* is a rule of evidence through which a **jury** may infer negligence **solely** from the surrounding circumstances. *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990). It applies if "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Id.* The procedural effect of *res ipsa loquitur* is to permit the jury to infer breach of duty and causation solely on the basis of evidence of the two factors listed above. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974).

In *Haddock,* the plaintiff alleged several specific acts of medical malpractice against a doctor during a colonoscopy in which the instrument perforated his colon. The plaintiff also pleaded for recovery under *res ipsa loquitur,* arguing that because his colon was perforated, negligence occurred. Importantly, the jury found several allegedly negligent acts occurred, but found no negligence. The Supreme Court of Texas reasoned that *res ipsa loquitur* only applied to cases in which "the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony." *Id.* at 951. The evidence showed that operation of the flexible colonoscope was not a "matter plainly within the common knowledge of laymen," thus it held *res ipsa loquitur* was improper. One consequence of *Haddock* is that expert testimony standing alone is not sufficient to establish a *res ipsa* claim. In a medical malpractice case where *res ipsa loquitur* is used, the character of the injury must be such that it would not normally occur in the absence of negligence. There-

fore, if *res ipsa* is to apply, unaided laymen must be able to determine negligence must have occurred from their common knowledge, and not solely through the aid of an expert.

The doctor's argument that the evidence of other cases of discitis are inadmissible under *res ipsa loquitur* misperceives the purpose of this offer of evidence by appellants. Appellant sought to prove that the doctor was negligent in breaching sterile technique. Unlike a *res ipsa loquitur* theory in an infection case in which **jury** is asked to infer negligence solely from the infection in question,[2] in this case, an **expert** inferred negligence from the infection between each of the three vertebra, other prior infections, and other surrounding circumstances. Thus, *res ipsa loquitur* was inapplicable. *See Manax v. Ballew,* 797 S.W.2d 71, 73 (Tex.App.—Waco 1990, writ denied).

The inferences a jury is permitted to draw in a medical malpractice case based on *res ipsa loquitur* are more limited than those of an expert's. Rule 703 provides: "The expert may testify in terms of opinion or inference and give his reasons therefor...." TEX.R.CIV.EVID. 703. This rule merely requires that the facts or data relied upon by the expert be those reasonably relied upon by experts in the field. Thus, unlike the jury, the expert could draw the conclusion that the other cases of discitis were evidence of recurring breaches of sterile technique. In conjunction with the other evidence of negligence in this case, the expert was entitled to conclude to a reasonable medical probability that the doctor was negligent in treating Farr.

We also note that the inference the jury would have been asked to draw from the other cases of discitis and the expert's testimony was much stronger than simply an infection occurred, thus negligence must have been present. The evidence also showed that discitis infections almost never occur in the absence of negligence, there was no breach of sterile technique by others, the average rate of discitis infections is

2. *See e.g. Wilson v. Stilwill,* 309 N.W.2d 898, 906 (Mich.1981).

quite low, and an expert testified to specific acts of negligence: the doctor's breach of sterile technique and the failure to diagnose. Thus, although circumstantial evidence strongly pointed to a specific act of negligence, direct testimony also supported this conclusion. *Res ipsa loquitur*, which concerns cases involving only weak circumstantial evidence, is inapplicable in this case. *Nevauex v. Park Place Hosp.*, 656 S.W.2d 923, 925 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.).

The same reasoning holds true on the issue of whether the doctor was negligent in failing to diagnose Farr's infection. The other cases of discitis are extremely probative of the doctor's negligence. The expert testified that, considering the other cases of discitis, appellant's symptoms should have been highly suspect and the doctor should have made more intense efforts to diagnose an infection, such as culturing the spinal tissue and fluid. Thus, there was no *res ipsa loquitur* issue raised because the expert drew the inference of negligence from the surrounding circumstances.

The expert's opinion and its basis was admissible. Tex.R.Civ.Evid. 703 and 704. We hold § 7.01 and *res ipsa loquitur*, which limit the type of inferences from circumstantial evidence that a jury may draw, do not bar admission of the prior incidents of discitis in this case, or the expert's opinion regarding the significance of these prior incidents.

Appellee next argues that prior acts or transactions are generally inadmissible. *Texas Cookie Co. v. Hendricks & Peralta*, 747 S.W.2d 873, 881 (Tex.App.—Corpus Christi 1988, writ denied). He also insists that the predicate of substantial similarity between the other cases of discitis and Farr's infection was not established. We disagree.

■ Other accidents or events may be admissible to prove that a similar incident

occurred, provided that the circumstances between the incidents are reasonably similar. *Missouri–K.–T. R.R. v. May*, 600 S.W.2d 755, 756 (Tex.1980) (Per curiam); *John Deere Co. v. May*, 773 S.W.2d 369, 372 (Tex.App.—Waco 1989, writ denied). The inference drawn is that if an act or occurrence happened before, it is likely that it occurred again if the circumstances are reasonably similar.

Two decisions illustrate this rule's application to this case. In *John Deere*, the plaintiff sought to prove that a particular bulldozer went into reverse, backed up, and killed the plaintiff's husband when he was underneath it, even though the gear shift was in neutral. She sought to admit evidence of thirty-four occasions when a similar type of John Deere bulldozer went into reverse while the engine was running even though the gear shift was locked in neutral. The similarities between the incidents was the fact that John Deere bulldozers shifted from neutral to reverse while the engine was running. The trial court admitted the evidence and the defendants appealed an adverse jury finding. The Waco Court affirmed.

Appellants in *John Deere* argued at trial and on appeal that a predicate of admissibility must be a showing that the bulldozers in the prior incidents were of a similar model, similarly adjusted, and that they experienced the same wear and tear on the transmission. Without this showing, they argue the evidence was inadmissible. The Waco Court disagreed, and held that the other incidents were admissible if they involved "the same type of occurrence." *Id.* at 372. The Court noted that identical circumstances, which is basically what the defense was arguing for, was not required.[3]

■ Appellee in this case argues that the similarity between the other cases of disci-

---

3. *Nevauex v. Park Place Hosp. Inc.*, 656 S.W.2d 923, 926 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.), is distinguishable. There the plaintiff sought to prove a doctor was negligent in excessively exposing a patient to cobalt radiation, and causing a burn. One prior incident in which the doctor exposed a patient to cobalt therapy and caused a radiation burn was excluded because the patient was being treated for a different purpose and the dosage was higher. Here the offered evidence showed an unusually high incidence of discitis involving the identical procedure.

tis is lacking because the infectious organism in the other cases was not identified. However, the evidence and the bill of exceptions testimony showed substantial similarity between the other cases of discitis and Farr's infection. They were separated in time by only two months. The cases were all traced to appellee. He performed the same procedure in the same room. The evidence also showed that discitis is extremely rare without breach of sterile technique. Even though the infectious organisms, if any, in the prior cases of discitis were not identified, the similarities were sufficient to bring this case within the rule in *John Deere.*

Appellee attempts to distinguish *John Deere* on several grounds. First, he argues that *John Deere* is a product liability case, and not a medical malpractice case. Medical malpractice cases, he argues, require expert testimony of specific acts of negligence. We find this distinction untenable: appellants sought to admit the similar cases of discitis as part of her expert's testimony regarding breach of duty and causation.

Appellant also argues that thirty-four prior incidents in *John Deere* distinguish that case from the instant case because of the substantially higher number of incidents in *John Deere.* We also find this distinction inapplicable. The number of discitis cases was high compared to the expected number of complications. Thus, five cases was a very large number of incidents during a two-month period.[4]

The rule articulated in *John Deere* applies here, and we hold the similarities between the other cases of discitis are sufficient to render them admissible.

■■■ Appellee's third argument against admission of evidence of the other cases of

discitis to prove breach of sterile technique in Farr's case and negligent failure to diagnose is that the probative value was substantially outweighed by the prejudicial effect. Appellee relies upon TEX.R.CIV.EVID. 403 which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

To properly apply this rule under the circumstances of this case,[5] the trial court must balance and weigh the probative effect of the evidence against its potential for unfair prejudice or confusion. We note that this rule generally comes into play when the probative value of the evidence is low or the problems with the evidence are serious. Only if the probative value of the evidence is **substantially** outweighed by the prejudicial effect is exclusion proper.

In a similar case, *Firestone Tire & Rubber Co. v. Battle,* 745 S.W.2d 909, 911–12 (Tex.App.—Houston [1st Dist.] 1988, writ denied), the Court found that the prejudicial impact of a prior accident involving an exploding tire did not substantially outweigh the probative value in the admission the evidence. The Court noted that the evidence was relevant to prove knowledge of a dangerous condition.

Like *Firestone,* the evidence here is relevant to prove knowledge of prior cases of discitis, and therefore an increased probability that the dangerous condition reoccurred in Farr. The doctor's knowledge of this series of infections tended to prove that the doctor was negligent in failing to change sterilization procedures, discover the breach of sterile technique, and diag-

---

4. We also note that the predicate for similarity appellee argues for, i.e., that the same organism caused the prior cases of discitis, is a fact which was not ascertainable at the time of trial because the doctor did not aspirate and culture any of the other patients. When evidence of the prior incidents or occurrences are controlled by one party, upon proof of some similarity by the proponent, the other party should have the burden of coming forward and disproving the similarity of the circumstances. Any other rule

would encourage destruction of evidence and failure to properly investigate dangerous situations, particularly when they recur.

5. The evidence was not cumulative, and delay is not a factor. Thus, the trial court was required to focus on the possibilities of unfair prejudice, confusion of the issues, and misleading of the jury.

nose Farr's infection. In addition, it was relevant to rebut the possibility that random factors caused the infection.

Thus, the high probative value of the prior transaction is not substantially outweighed by the prejudicial effect on the jury. The trial court's ruling cannot be sustained on Rule 403 grounds.

We find error in the exclusion of evidence of the prior cases of discitis in appellee's patients for three reasons. First, *res ipsa loquitur* does not bar admission of this evidence. Second, the substantial similarity between the other cases of discitis rendered them admissible to prove breach of sterile technique and negligent diagnosis. And third, the prejudicial effect of the evidence does not substantially outweigh its probative value.

 Our next task is to determine whether the error is reversible. TEX. R.APP.P. 81(b)(1). This court may only reverse a trial court's judgment if the error amounts to such a denial of appellant's rights that it was reasonably calculated to, and probably did, cause the rendition of an improper judgment, or probably prevented appellant from making a proper presentation of the case to this Court. *Id.* The scope of review in this inquiry is the entire record. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 689 (Tex.1990); *Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex. 1990). In most cases, harmful error does not occur if the inadmissible evidence is cumulative, or if it does not concern a material issue. *Gee v. Liberty Mut. Fire Ins.,* 765 S.W.2d 394, 396 (Tex.1989).

The error in this case completely kept from the jury the fact of the other cases of discitis. This was an important component of the expert's opinion. This evidence was circumstantially strong in support of the expert testimony on the issue of breach of sterile technique. Evidence of the other infections also strongly supported the theory that the doctor was negligent in failing to diagnose Farr's discitis. Thus, the evidence was relevant to a material issue and was not cumulative.

We have reviewed the entire record. Had the trial court admitted the evidence of prior cases of discitis, we believe the jury probably would have found the doctor negligently breached sterile technique and failed to properly diagnose. We therefore reverse the trial court's judgment and order a new trial consistent with this opinion.