

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00386-CV

SEAN C. WOODARD AND SHAILA D. MULHOLLAND, APPELLANTS

V.

BRENT WAYNE SHERWOOD, M.D., APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 97,929-A, Honorable Dan L. Schaap, Presiding

September 23, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellants, Sean C. Woodard and his wife Shaila D. Mulholland, sued appellee Brent Wayne Sherwood, M.D., after the death of their nineteen-month-old son Alvee Woodard. They asserted Dr. Sherwood's emergency department treatment of their son fell below the applicable standard of care and such negligence proximately caused the child's death. The jury returned a verdict in favor of Dr. Sherwood and the trial court rendered a take-nothing judgment. Through one appellate issue, Woodard and Mulholland contend the trial court's exclusion of certain medical records pertaining to

Alvee's twin brother Mack Woodard amounted to reversible error.  We disagree and will affirm.

## Background

During early May 2008, Alvee, Mack, and Shaila Mulholland were in Amarillo visiting the boys' paternal grandparents Tom and Phyllis Ferguson.  During the visit, Mrs. Ferguson noticed that Mack, and on the next day Alvee, were "slowing down." Vomiting and diarrhea followed.

On the evening of May 12, and into the early morning hours of May 13, the boys were treated by Dr. Sherwood in the emergency department of Baptist/St. Anthony's Hospital (BSA) in Amarillo.  The triage nurse noted on Alvee's emergency department record at 6:40 p.m. that his chief complaint was fever, diarrhea and breathing difficulty. Mack's chief complaint was fever, diarrhea, vomiting, and lethargy.  When asked which of the twins was more sick Robert Matthews, M.D., an expert presented at trial by Woodard and Mulholland, opined "Alvee was very much--very much more affected."

Dr. Sherwood ordered laboratory tests and intravenous fluid for Alvee and Mack. The test results indicated rotavirus and strep.  Based on the lab results an antibiotic to treat strep throat was given Alvee intravenously.  Alvee received some two hours and forty minutes of bolus intravenous fluid therapy.[1]  A fluid challenge did not result in

---

[1] According to medical testimony at trial, bolus IV refers to giving intravenous fluid over "five, ten, twenty minutes, as fast as the IV will accept it."

further vomiting.[2]  As for the treatment of Mack, Dr. Sherwood agreed that he "gave Alvee and Mack the same management, same drug, same levels, all of that stuff, seeing them at basically the same time[.]"  Medication to curtail the urge to vomit was administered.  Dr. Sherwood concluded Alvee was suffering strep throat and moderate volume depletion.

Mrs. Ferguson explained that she, the twins and their mother returned home from the BSA emergency department at about 2:00 a.m. on May 13.  Mrs. Ferguson and Mulholland attempted to give the boys fluids.  Later that morning Alvee was "very whiny and crying."  He could not seem to sleep.

In an effort to help Alvee relax and sleep, his mother took him for a car ride while Mrs. Ferguson cared for Mack.  During the ride Alvee stopped breathing.  Emergency rescue personnel were immediately summoned but according to Mulholland, Alvee was not responsive during the approximate ten-minute period preceding the arrival of EMT personnel.

At trial, a pathologist presented by Dr. Sherwood opined that Alvee was dead when EMT personnel arrived.  An emergency department physician pronounced Alvee dead at Northwest Texas Hospital (NWTH) in Amarillo.  The medical examiner conducting a court-ordered autopsy concluded the cause of death was complications of gastroenteritis.

---

[2] It was further explained through medical testimony that a fluid challenge is a procedure for testing the ability of a patient to keep liquid down over a measured interval, typically between fifteen and thirty minutes.

3

According to Dr. Matthews, Alvee's death was caused by severe dehydration resulting in multi-organ failure. Paul Finkelstein, M.D., a medical expert presented by Dr. Sherwood, opined the sequence of events resulting in Alvee's death began with aspiration causing respiratory failure causing cardiovascular collapse causing death.

Alvee was pronounced dead in the NWTH emergency department at 12:12 p.m. on May 13. At 1:15 p.m. that day, Mack was taken to the emergency department of NWTH. He presented with symptoms similar to those seen in Alvee at BSA the previous night. Later that afternoon, he was admitted to the hospital for volume depletion. Mack was successfully discharged from the hospital on May 15, following a course of treatment including intravenous fluid therapy.

Woodard and Mulholland's suit against Dr. Sherwood alleged he negligently failed to admit Alvee to the hospital when he treated the twins in the BSA emergency department.

The trial evidence centered on the differing opinions of Drs. Matthews and Finkelstein concerning the ultimate issues of the case including the claim of Woodard and Mulholland that Dr. Sherwood's decision not to admit Alvee to the hospital fell below the applicable standard of care. For example, Dr. Matthews believed it would be "dangerous" to send anyone home with laboratory test results like Alvee's. He explained:

> No, I can't see any rationale, knowing what we know about his diagnosis. You know, the presence of strep throat, which makes it tough for him to drink. You know, if you guys have had strep throat in the past, or have had children with strep throat, you know, it's very hard to get them to drink or drink yourself. The fact that he had rotavirus, it means he's going to have trouble absorbing fluids orally. Rotavirus affects your intestinal tract

4

in a way that you're just not going to reliably absorb fluids well. Plus, if diarrhea comes back again--it sounds like there was a little window there where there wasn't much diarrhea, but if it comes back again, you just can't keep up. Intravenous fluids are really necessary on a continual basis.

In Dr. Matthews' opinion, Alvee would have survived had he been admitted to the hospital for continuous intravenous fluid therapy.

As for whether Alvee met the "appropriate" discharge criteria, Dr. Finkelstein told the jury:

> Well with the presumed diagnosis of dehydration, the known diagnosis of the rotavirus test that was positive causing the diarrhea, the known streptococcal rapid swab that was positive, he received appropriate therapy for that, meaning he received the antibiotic that was appropriate for the strep pharyngitis. He received IV bolus therapy followed by maintenance therapy. He was given a PO challenge, a fluid challenge, at the end to ensure that he could continue to take fluids at home and hydrate himself.
>
> So everything that I've found has been consistent with a patient that meets the criteria for discharge from the emergency department. His vital signs additionally normalized . . . in all categories. So I absolutely think--that would have been a patient I would have discharged on any given day.

Dr. Finkelstein concluded that Dr. Sherwood's conduct was within the standard of care and therefore not negligent.

According to the trial court's order in limine, the jury was not told of Mack's NWTH admission and treatment. Through an offer of proof, Woodard and Mulholland offered Mack's NWTH emergency department and hospital records. These records document a course of evaluation and treatment commencing about one hour after Alvee was pronounced dead.

5

The jury answered "no" to a single question inquiring, "Did the negligence, if any, of Dr. Sherwood proximately cause the death of Alvee Woodard?" This appeal followed the trial court's take-nothing judgment.

## Analysis

On appeal, Woodard and Mulholland argue the trial court erred by failing to admit Mack's NWTH records. The nub of the argument is the records were wrongfully excluded from evidence on the ground of relevancy.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *In re J.P.B.,* 180 S.W.3d 570, 575 (Tex. 2005). A court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). We will uphold a trial court's evidentiary ruling if the record presents any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998).

Relevant evidence is that having a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Tex. R. Evid. 401.

Woodard and Mulholland support their argument for the relevance and admissibility of Mack's NWTH records with the decision in *Farr v. Wright.* 833 S.W.2d 597 (Tex.App.--Corpus Christi 1992, writ denied). In that case, Farr suffered severe pain after Dr. Wright performed a discogram. Several months later another doctor found that the discs on which Wright performed the discogram were infected causing a condition known as discitis. In Farr's later suit against Wright, discovery showed that

6

during his career of three to four years, Wright then had performed between thirty and fifty discograms, and that between ten and sixteen percent of his patients had suffered discitis. Wright had experienced three or four cases of discitis in the two-month period during which he treated Farr. In studies, the rate of discitis experienced by the studies' authors was less than one percent of all discograms performed. Based on the high incidence of discitis, and other evidence, Farr's expert concluded that Wright consistently breached sterile technique during this period, and that, to a reasonable medical probability, also breached sterile technique when he treated Farr. *Id.* at 598-99. He further concluded Wright negligently failed to diagnose Farr's discitis, based in part on the frequency with which his patients had suffered that condition.

At trial, Farr offered the evidence of the other cases of discitis as a basis for her expert's opinion Wright was negligent. When the offer was denied, the expert testified during Farr's bill of exceptions, explaining his opinion that the frequency of discitis in Wright's practice was unusually high, compared with the expert's own experience and that reflected in studies. *Id.* at 599. When the jury found Wright was not negligent, Farr appealed and the court of appeals held exclusion of the evidence of other cases of discitis was harmful error. It agreed with Farr the excluded evidence of Wright's other cases of discitis was relevant to show knowledge, negligence and causation, and was of such substantial similarity to Farr's case as to authorize its consideration by her expert in reaching his opinion. The appellate court found Wright's prior cases of discitis were substantially similar to Farr's and should have been admitted. *Id.* at 603.

Woodard and Mulholland contend Mack's NWTH records were relevant to show the standard of care for patients who have the symptoms the twins presented at BSA's

7

emergency department, and to show causation. But the information given the trial court here differed significantly from that described in *Farr*. The court of appeals in *Farr* pointed out that the existence of the other cases of discitis was "an important component of the [plaintiff's] expert's opinion." *Id.* at 603. By contrast, no expert testified that Mack's NWTH records were significant to an opinion on the cause of Alvee's death or the standard of care. Dr. Matthews did not list Mack's NWTH records among the records he had reviewed in formulating his opinions, nor did he discuss Mack's NWTH hospitalization in his testimony. Dr. Sherwood's expert Dr. Finkelstein, called to testify during the plaintiffs' offer of proof, testified he received the NWTH records but was not asked to opine on them and merely "skimmed" the "basic ER portion." Dr. Matthews and Dr. Finkelstein rendered their opinions without resort to Mack's NWTH records. No proof before the jury or outside its presence indicated that the parties' expert physicians were hindered or limited in formulating their respective opinions on the standard of care, any breach, or causation of any resulting harm, by the exclusion of Mack's NWTH records.

Moreover, the trial court heard testimony from which it could have concluded Mack's admission and treatment at NWTH did not present circumstances substantially similar to those Dr. Sherwood faced when he decided to send Alvee and Mack home from BSA's emergency department. During Dr. Finkelstein's testimony during the offer of proof, Woodard and Mulholland adduced the following testimony:

> Q And, in fact, what we know is that Mack was admitted to [NWTH] and maintained on IV therapy, correct?
> A That's correct.
> Q And he survived?

8

A That's correct.

Q Survived 12 hours after--I mean, he was admitted 12 hours after discharge [from BSA's emergency department], correct?

A That's correct.

Q So we have a circumstance here where we have patients that are virtually identical, similar if not identical, on presentation clinically to the two respective emergency rooms, correct?

A Similar, yes.

Q We had two patients that are twins, born about five minutes apart; do you understand that?

A I do.

Q Same size person, same illness, correct?

A That's correct.

Q And we have one twin who was treated, as our expert Dr. Matthews says, should have been treated, and he survived, correct?

A That's correct.

***

Q So what we know is that the presentation of Mack is clinically very similar; the laboratory presentation is similar; the diagnosis is similar; the treatment is as Dr. Matthews says it should have been for Alvee, right?

A Yes, sir.

However, the trial court also heard Dr. Finkelstein give the following testimony in response to questions inquiring about similarities between the histories given in the BSA emergency department on May 12 and Mack's history given on his presentation at NWTH:

A Well, they were a bit dissimilar, because again . . . Mack had already been to the [BSA] emergency department, received IV fluid therapy, continued to take oral hydration. So that historical feature alone makes the two cases almost incomparable.

9

Q How about the historical history that Mack's brother, who had similar symptoms, had suddenly and unexpectedly died; is that an important piece of history?

A I think that's exquisitely an important piece of history.

Q Does that history make these two presentations similar or very different?

A Completely different.

The trial court thus heard evidence that the NWTH treatment team who saw Mack on May 13 had the benefit of hindsight from the twins' treatment the previous day at BSA; that Mack had received bolus intravenous therapy and antibiotics the previous day, in addition to oral hydration during the intervening hours; and from Alvee's tragic death an hour earlier. From this evidence, the trial court reasonably could have determined the circumstances under which Dr. Sherwood made his treatment decisions lacked substantial similarity with those under which decisions regarding Mack's treatment were made at NWTH. The law permits juries to draw inferences from the occurrence of other substantially similar events. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004); *Daseke v. Daseke*, No. 05-96-00119-CV, 1998 Tex.App. Lexis 3, at *11-12 (Tex.App.--Dallas, January 6, 1998, no pet.) (not designated for publication); *McKee v. McNeir,* 151 S.W.3d 268, 270 (Tex.App.--Amarillo 2004, no pet.). The degree of similarity required for the admission of such evidence depends on the issue the evidence is offered to prove. *Nissan*, 145 S.W.3d at 138. In this case, the testimony supporting a conclusion the events sought to be compared were not substantially similar, coupled with the absence of expert testimony explaining how and why records from Mack's later hospital admission and treatment shed light on the causes of Alvee's death, combine to satisfy us that the trial court's exclusion of the

records was not an abuse of discretion.[3]  We overrule the issue of Woodard and Mulholland.

Conclusion

Having overruled the sole issue of Woodard and Mulholland, we affirm the judgment of the trial court.

James T. Campbell
Justice

---

[3] Dr. Sherwood also contends that even if relevant the records of Mack's NWTH treatment were properly excluded under Rule of Evidence 403, and contends their exclusion was in any event not reversible error because the case did not turn on the excluded records.  *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). We do not address those contentions.